**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

HOLLAND CONSTRUCTION                    *
CORPORATION
                                        *
      Plaintiff/Counter-Defendant
                                        *
  v.                                    Civil Action No. 8:17-cv-00937-PX
                                        *
BOZZUTO CONTRACTING
COMPANY, et al.                         *

      Defendants/Counter-Plaintiffs         *
                                       ***

## <u>MEMORANDUM OPINION</u>

Pending in this construction dispute is a motion for partial summary judgment filed by

contractor Bozzuto Contracting Company and its surety, Liberty Mutual Insurance Company

(together "Bozzuto") (ECF No. 67); a cross-motion for partial summary judgment filed by

subcontractor Holland Construction Corporation ("Holland") (ECF No. 69);  a motion in limine

filed by Holland to exclude expert testimony and opinions by Kenneth Kosteva (ECF No. 68);

and a motion for certification of a question of law to the Maryland Court of Appeals filed by

Holland (ECF No. 70).  The matter has been fully briefed, and no hearing is necessary.  *See* Loc.

R. 105.6.  For the reasons below, Bozzuto's motion for partial summary judgment is GRANTED

IN PART and DENIED IN PART; Holland's cross-motion for partial summary judgment is

DENIED; Holland's motion in limine to exclude expert testimony is DENIED; and Holland's

motion for certification is DENIED.

### I.    Background

This case arises from a construction project at The Rotunda (the project), a mixed-use

property in Baltimore, Maryland, featuring a shopping mall, restaurants, office space, and luxury

apartments.  ECF No. 67-26 at 2.  Defendant Bozzuto Contracting Company was selected as the general contractor for this ambitious renovation.  ECF 67-4.  Bozzuto Contracting secured a payment bond from Defendant Liberty Mutual Insurance Company to guarantee payment to its subcontractors and material suppliers.  ECF 67-1 at 5.

In January 2014, Bozzuto executed a subcontract with Holland Construction Corporation ("Holland") to perform masonry work on the project.  ECF 67-2 at 2.  At the time of execution, the subcontract was valued at $3,857,000, which later grew to $4,923.309.21 after Bozzuto submitted several change orders.  *Id.* at 3; ECF No. 67-3 ¶ 4.  To date, Bozzuto has paid Holland $4,406,476.31.  *Id.*

The subcontract includes detailed architectural and structural drawings and project specifications.  ECF No. 67-2 at 3 (Art. 2(a)).  Under the subcontract terms, Holland agreed to perform its work in "strict accordance" with these documents, "without delay," and to the "full satisfaction" of Bozzuto, as well as a third-party architect and the owner of the Rotunda.  *Id.* at 2 (Art. 1(b)).  Holland also agreed to be bound to the terms of the primary contract between Bozzuto and the owner, and to assume the "risks and responsibilities" that Bozzuto had assumed to the owner.  *Id.* at 4 (Art. 5(a)).  Under the prime contract terms, Holland agreed that if disputes arise, it would nonetheless "proceed diligently" with its work pending "final resolution" of the dispute.  *Id.*; ECF No. 67-4 at 46 (Art. 4.3.4 of the General Conditions of the Contract for Construction).

Holland completed the bulk of its masonry work by the end of 2015.  ECF No. 67-3 ¶ 5. On November 30, 2015, Holland submitted a payment application for $205,161.74, in which it represented that it had completed over 99% of its masonry work ("Payment Application").  ECF No. 67-5 at 2.   Also, as required under the subcontract and as part of the Payment Application,

Holland submitted an "Acknowledgment of Payment and Settlement Due."  ECF No. 67-2 at 3 (Art. 3(c)); ECF 67-5 at 13.  Pursuant to the Payment Application, Holland expressly "waive[d] any rights in the nature of lien, claims, or bond claims, which [Holland] may have for labor performed and/or materials furnished to date and agree[d] that [the requested] payment . . . is in full settlement of any amount due . . . to date."  *Id.*  The written waiver included a blank space for Holland to list any exceptions to such waiver.  The space was left blank.  *Id.*

Although Holland represented in the Payment Application that it had completed its work, a number of items remained.  ECF No. 69-2 at 3-4; ECF No. 67-12.  In March 2016, Bozzuto sent Holland a list of outstanding items for completion based on the architect's field reports.  ECF Nos. 67-7 & 67-8.  As Holland made progress on some of these items, it sent to Bozzuto a list of proposed change orders.  ECF No. 67-3 ¶ 8.  However, the requested change orders included some work that had been completed before the Payment Application.  *Id.*

In August 2016, Holland submitted to Bozzuto an updated list of change order requests in a document entitled "change request log."  *Id.* ¶ 9; ECF No. 67-9.  Based on this log, Holland sought payment for 66 claims, 47 of which are disputed in this litigation and of those, 28 relate work or materials provided before the Payment Application.  ECF No. 67-3 ¶ 9; ECF No. 67-9; ECF No. 67-10.

On December 1, 2016, Bozzuto shared the architect's punch-list, which attributed hundreds of defective and incomplete items to Holland.  ECF No. 67-3 ¶ 11; ECF No. 67-12.  Holland returned to the site and, from January to February 2017, worked on correcting the items.  ECF No. 69-2 at 3-4; ECF No. 69-3 ¶ 3.  In March 2017, Holland notified Bozzuto that it had completed those punch-list items which, according to Holland, were within the scope of its masonry work, and documented in a spreadsheet its response to each punch-list item.  ECF No.

3

*Id.*; ECF No. 69-4.  Hundreds of punch-list items remained outstanding.  *Id.*  Bozzuto objected to Holland not addressing the outstanding items.  ECF No. 74-1 ¶¶ 7-9.  Holland nonetheless demobilized and left the project.  *Id.*; ECF No. 67-3 ¶ 12.  Holland filed this action a month later, on April 11, 2017.  ECF No. 1.

Bozzuto next sent Holland a "Notice to Cure Default" on May 16, 2017, which alerted Holland to the areas of deficient performance that Bozzuto viewed as constituting Holland's material breach of the subcontract.  ECF No. 67-13.  As authorized under the subcontract, Bozzuto gave Holland three days to cure the default.  *Id.*  Holland's president responded three days later in writing, stating that the punch list was complete and that remaining items were not Holland's responsibility.  ECF No. 69-5.  Bozzuto next filed a counterclaim against Holland for breach of contract arising from Holland's alleged incomplete and deficient work.  ECF No. 10. Holland never returned to the site, and Bozzuto officially terminated the contract in December 2018.  ECF No. 67-14.

Relevant to Bozzuto's counterclaim is Holland's brick tie installation at the project.  ECF No. 67-8 at 2; ECF No. 67-12; ECF No. 67-15 at 2; ECF No. 67-17 at 3.  Brick ties are structural supports installed between the interior and exterior walls of a building.  ECF No. 67-1 at 14; ECF No. 67-18.  Brick ties span the wall cavity by connecting the outer wall to the inner wall. *Id.*  This is done by anchoring the brick tie in the inner wall and then embedding the brick tie in the mortar of the outer wall.  *Id.*  Improperly installed brick can cause "reduction in lateral load resistance," and in turn may result in "distress or failure of the masonry facade."  ECF No. 67-26 at 7.  For this reason, the subcontract required Holland to follow the manufacturer's instructions when installing the brick ties and to embed them at least two inches into the external wall's mortar.  *Id.* at 6; ECF No. 67-21 at 2-3; ECF No. 67-22 at 2-3.

Concerned with the quality of Holland's brick-tie work throughout the project, Bozzuto hired Kenneth Kosteva, a civil engineer and associate principal at Wiss, Janey, Elstner Associates, Inc., to conduct a limited assessment of the brick-tie installation and, if appropriate, provide a remedial recommendation and an expert opinion on the sufficiency of Holland's work. ECF No. 67-26 at 2. Over six days, Kosteva opened the Rotunda walls in 31 places in order to take a representative sample of Holland's brick-tie work. *Id.* at 4. Kosteva identified deficiencies with Holland's work in 28 of those openings. *Id.* The deficiencies fell into one of five categories: brick ties that were (1) a type not approved by Bozzuto; (2) not anchored to the back-up wall; (3) improperly bent, twisted, and reconfigured so that only one of its two legs spanned the cavity wall; (4) insufficiently embedded in the exterior wall; or (5) installed in some other manner that deviated from project specifications and industry standards. *Id.* at 4-6. Because only three of the 31 samples were installed without any identified defect, Kosteva concluded that there was a "high probability" that the brick-tie installation was deficient throughout the building. *Id.* at 7.

Holland, in response, retained Eric Peterson ("Peterson"), a Principal of WDP & Associates Consulting Engineers, Inc., to evaluate Kosteva's work. ECF Nos. 67-27 & 69-9. Peterson disputes Kosteva's findings for a number of reasons. ECF No. 69-9 at 4-9. Peterson also reviewed and opined on Bozzuto's punch-list items. *Id.* at 9. Peterson noted that certain items, such as water saturation around the masonry work, appeared to be the result of poor "design details" and not Holland's defective workmanship. *Id.* at 9-10. Peterson also took issue with claimed discoloration of the mortar in certain locations. *Id.* at 10. More broadly, Peterson challenged several punch-list items, such as spilled paint, as "incorrectly associated" with Holland, rather than caused by other subcontractors. *Id.*

5

This unhappy ending to the parties' business relationship spawned this litigation. The Complaint avers that Bozzuto breached the subcontract by failing to compensate Holland fairly for the work it performed on the project. ECF No. 1 ¶¶ 7-8. Holland claims that it is owed $1,277,146 for the outstanding contract balance, retainage, and extra work it performed at Bozzuto's request. *Id.* ¶ 8. Bozzuto's counterclaim avers that Holland breached the subcontract by failing to complete its assigned work and then walking off the job. ECF No. 10 ¶¶ 23-33.

Bozzuto now moves for partial summary judgment in its favor as to Holland's breach of contract claim. According to Bozzuto, Holland waived entitlement to payment for 28 of its change order requests when it executed the Payment Application. ECF No. 67-1 at 18-23; ECF No. 67-9; ECF No. 67-10. Holland challenges the validity of the waiver and asks this Court to certify the legal question to the Maryland Court of Appeals. ECF No. 69-1 at 5-14; ECF No. 70.

Bozzuto also moves for partial summary judgment on its counterclaim, urging the Court to find as a matter of law that Holland breached the subcontract by performing substandard work related to the punch list and brick ties, as well as by abandoning the project. ECF No. 67. Holland separately moves to exclude Kosteva's expert opinion from the record and seeks partial summary judgment in its favor as to Bozzuto's brick-tie claims. ECF Nos. 68 & 69-1. The Court addresses each motion separately below.

## II.    Standard of Review

Summary judgment is proper if no genuine dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* (quoting *Anderson*, 477 U.S. at 248–49).

On a motion for summary judgment, the Court must consider record evidence, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–34). Such evidence must be construed in the light most favorable to the non-moving party. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citing *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005)). "Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

In breach of contract claims, the Court must first determine whether "as a matter of law, the contract is ambiguous or unambiguous on its face"; if the relevant contract terms are unambiguous, the court "may then properly interpret the contract as a matter of law." *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) (citation and quotation marks omitted); *see also World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992).

### III.   Analysis

Bozzuto urges this Court to grant partial summary judgment as to certain aspects of Holland's claims and its own counterclaim.  ECF No. 67-1.  As to Holland's breach of contract claim, Bozzuto argues that Holland has waived any claim for payment for 28 extra-work items performed prior to the Payment Application.  *Id.* at 18-23.  As to Bozzuto's counterclaim, Bozzuto argues that as a matter of law, Holland breached the subcontract when it abandoned the worksite with hundreds of outstanding punch-list items and by installing brick ties in a defective manner.  *Id.* at 24-29.  Holland cross moves on the brick tie installation, contending that it must prevail as a matter of law.  ECF No. 69-1.  For the following reasons, summary judgment is granted in Bozzuto's favor on the 28 claims and Holland's abandoning the worksite but denied as to the brick tie installation.

### A.   Bozzuto's Summary Judgment Motion on Claims Predating the Payment Application

Bozzuto contends that Holland's breach of contract claim fails as a matter of law for 28 items of which Holland now seeks payment.  ECF No. 67-1 at 18-23.  Holland does not dispute that it performed the work as to the challenged items before execution of the Payment Application (November 30, 2015).  ECF No. 67-10; ECF No. 69-1 at 6-14.  Accordingly, says Bozzuto, Holland's blanket waiver of entitlement to payment on such claims, as reflected in the plain language of the Payment Application, entitles Bozzuto to judgment as a matter of law on those claims.  ECF No. 67-1 at 18-23.

The Payment Application reads:

> For the above said consideration, [Holland] waives **any rights in the nature of lien, claims or bond claims, which it may have for labor performed and/or materials furnished to date** and agrees that payment of the amount stated in item B(5) above [\$205,161.74] by Bozzuto Contracting Company is in **full settlement of any**

8

> **amount due for any and all labor performed and/or material furnished to date**, except as listed below.

ECF No. 67-5 at 13 (emphasis added).  Immediately below this clause appears the term "EXCEPTIONS" printed alongside a blank space.  *Id.*  The Payment Application submitted to Bozzuto left the "EXCEPTIONS" section blank.  *Id.*

Although Holland asserts otherwise, the Court concludes that this language is unmistakably clear.  *See Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 496 (2005) (releases are contracts and, to the extent they contain "plain and unambiguous" language, are to be construed accordingly).  The provision states that in exchange for Holland's requested payment, Holland waives any claims as to "*any* and *all* labor performed and/or material furnished to date."  ECF No. 67-5 at 13 (emphasis added).  The provision also plainly states that Bozzuto's payment on the application constitutes "full settlement of any amount due."  *Id.*  Holland took no "EXCEPTIONS" to this broad waiver.  *Id.*  Thus, Holland has waived any claim for payment on work performed prior to November 30, 2015.  *See United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 833–36 (D. Md. 2016).

To "avert the sting of an ill-conceived release agreement," *id.*, Holland seeks to undermine the clarity of the release provision.  ECF No. 69-1 at 5-14.  None of its arguments succeed.  Holland contends principally that because the section is titled "affidavit of release of lien" the operative provision only applies to liens and not other kinds of claims.  *Id.* at 6.  This Court, however, will not accept an "interpretation which casts out or disregards a meaningful part of the language of the writing."  *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167 (1964); *see also Hartford Accident*, 168 F. Supp. 3d at 833.  The release clearly applies to "*any rights* in the nature of lien, *claims* or bond claims*."*  ECF No. 67-5 at 13 (emphasis added).  This broad language includes claims for payment on work performed prior to the Payment Application.

Holland gives the Court no grounds to read the provision as narrowly as it suggests.

Holland next argues that because it did not write the word "none" under the "exceptions" section, a genuine issue of material fact remains as to whether it released all claims.  ECF No. 69-1 at 7; ECF No. 67-5 at 13 ("If none, write "None.").  But no trier of fact could read into this provision an obligation to write "none" where the import of "none" could be carried out by leaving the same provision blank.  Rather, the release language is clear—Holland agreed to release any claims relating to "labor performed and/or materials furnished . . . *except as listed below*."  *Id.* (emphasis added).  Failure to list any exceptions can only be read as Holland having not identified any.[1]

Holland also attempts to assert that the above provision, in contrast to other similar full releases, somehow does not constitute an unambiguous full release.  ECF No. 69-1 at 7; *Hartford Accident*, 168 F. Supp. 3d at 829 ("waive[s] and release[s] all liens . . . and claims and demands . . . arising out of [the subcontractor's] work, labor . . . or materials . . . performed or furnished . . . through the period covered by the current payment and all previous payments"); *DC Mason Builders, Inc. v. Bancroft Constr. Co.*, CV RDB-15-0046, 2018 WL 6179535, at *5 (D. Md. Nov. 27, 2018) ("hereby expressly waives, releases, and discharges . . . any and all claims for mechanics' liens and rights to any such claim . . . for labor, services, or materials or otherwise in connection with payment for said work or improvements"); *United States v. Continental Casualty Co.*, No. ELH-16-3047, 2018 WL 4052246, at *10 (D. Md. Aug. 23, 2018) ("forever waives and release[s] any and all causes of action"); *see also United States v. Travelers Casualty*

---

[1] Holland's argument that it adequately preserved all of its claims simply by not writing "none" under the exceptions section is belied by its later acknowledgement form completed on February 2, 2017.  ECF No.67-28 at 14.  There, Holland wrote very clearly that it was preserving its claims, many of which had already been released via the Payment Application from November 2015, and then appended a spreadsheet with its claims to the acknowledgment form.  *Id.* at 15-17.

*& Surety Co. of Am.*, 55 F. Supp. 3d 852, 855 (N.D. W. Va. 2014).  That other similarly worded releases work a similar result does not lend credence to Holland's view that this release is ambiguous.  In short, the challenged provision is clear and comprehensive.  *See Owens-Illinois*, 386 Md. at 496.  It covers the 28 extra work claims that predated Holland's execution of the payment application.[2]  ECF Nos. 67-9 & 67-10.

In a last-ditch attempt to defeat this argument, Holland separately urges the Court to either find the release unenforceable because it was not supported by "consideration," or to certify the question to the Maryland Court of Appeals.  ECF No. 69-1 at 10.  As to this point— whether a release provision in exchange for partial payment is enforceable absent additional consideration—Holland contends that the absence of controlling Maryland precedent on this question supports certification of the issue to the Maryland Court of Appeals for guidance.  ECF No. 70 at 3.

No doubt, certification to the Maryland Court of Appeals is proper to resolve a question of state law "determinative" in the federal case.  *Grattan v. Bd. of School Comm'rs*, 805 F.2d 1160, 1164 (4th Cir. 1986).  But where state law is clear, a federal court should endeavor to reach the issue before it using state court precedent as its guide.  *See Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 621 (D. Md. 2013); *see also Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994); *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) ("A state's highest court need not have previously decided a case with identical facts for state law to be clear.  It is enough that a fair reading of a decision by [the] state's highest court directs one to a

---

[2] Holland tries to salvage four of its 28 waived claims on the grounds that Bozzuto "admitted" they were "legitimate claims due and owing to Holland."  ECF No. 69-1 at 14 n.25.  Holland's argument is wholly conclusory.  Holland's sole evidence is a set of handwritten notes by an unidentified individual authored at an unknown date and time.  ECF No. 69-7.  Nothing else in the record supports that these notes are reliable or somehow memorialize otherwise admissible evidence.  ECF No. 74 at 16 n.6.  And Holland makes no effort to explain the potential legal significance of these notes.  *Id.*  Without more, the notes do not generate a genuine dispute of material fact.

particular conclusion.").  That is this case.

It is axiomatic that a valid and enforceable contract requires adequate consideration.  *See Harford Cty. v. Town of Bel Air*, 348 Md. 363, 381–82 (1998) (citing *Beall v. Beall*, 291 Md. 224, 229 (1981)).  The more discrete question presented is whether forbearance under a release provision of this kind must be supported by separate, additional consideration.  ECF No. 70-1 at 7.  As Bozzuto points out (ECF No. 74 at 12), the Maryland Court of Appeals plainly reached this question in *Gerard C. Wallace Co. v. Simpson Land Co.,* 267 Md. 702, 704 (1973).

In *Gerard*, the subcontractor signed a release of future claims in exchange for receiving 80% of the total contract price and a six-months promissory note for the remaining 20%.  *Id.* When the general contractor became insolvent and could not deliver on the note, the subcontractor filed suit, attempting to void the release on the grounds that it lacked adequate consideration.  *Id.* at 705–06 ("hereby waive[s] and release[s] any and all lien, or claim or right to lien on said above described building and premises . . . on account of labor or materials, or both, furnished").

The Maryland Court of Appeals was matter-of-fact in its decision.  It held that the subcontractor opted to sign a "general release, unqualified in its terms," and that "[c]onsideration [was] found in the provisions of the contract itself."  *Id.* at 706 (citing *Sodini v. Winter*, 32 Md. 130 (1870)); *see also id.* (discussing *Perper v. Fayed*, 247 Md. 639, 641 (1967)) (finding that if subcontractor wanted to create a more narrowly drawn waiver, "it should have said so").  Notably, the Court endorsed a more expansive release than the one here.  The subcontractor in *Gerard* agreed to release *all* claims related to labor or materials, present and future.  *Gerard*, 267 Md. at 706 (release covered all claims "furnished or [that] *may be furnished*") (emphasis added).  The *Gerard* Court thus concluded that Maryland law "contemplates with approval that there will

be waivers," including a "wavier to a prime contractor by a subcontractor." *Id.* at 707 (quoting *Port City Constr. Corp. v. Adams & Douglass, Inc.*, 260 Md. 585, 587 (1971)). Accordingly, and as to construction contracts, a release provision as this one is supported by adequate consideration. *Gerard*, 267 Md. at 706–07.

Holland, in response, asserts that *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139 (2003), calls into question the extension of *Gerard* here. ECF No. 79 at 3. This Court cannot agree. *Cheek* involved the invalidation of an arbitration provision that allowed unilateral employer revocation of an initial promise to arbitrate. *Cheek*, 378 Md. at 142–43. Such an "illusory promise," the Court found, was unenforceable. *Id.* at 149. But this case does not—in any way—involve such an "illusory" promise capable of unilateral revocation as in *Cheek*. *Id.* Rather, this matter can and will be capably resolved following the Court's pronouncement in *Gerard*. *See also Hartford Accident*, 168 F. Supp. 3d at 835; *Continental Casualty*, 2018 WL 4052246, at *11.

Holland next attempts to read the Payment Application as a separate contract that must be supported by consideration in addition to the sum negotiated for the subcontract. ECF No. 69-1 at 10-11. Holland tries to construe the subcontract as imposing on Bozzuto a preexisting duty to remit partial payments to Holland. *Id.* Thus, says Holland, any deviation from such payments constitutes a new agreement that must be supported by new consideration. *Id.*

The plain language of the subcontract belies Holland's argument. The subcontract expressly required Holland to fill out an acknowledgment form that included the release provision every time it sought partial payment from Bozzuto. ECF No. 67-2 at 3 (Article 2a including the "Acknowledge of Payment and Settlement Due" as one of the contract documents); *id.* (stating separately in Article 3c that "a Partial Waiver of Lien and Subcontractor's Affidavit

shall be submitted with each request for payment").  These were bargained-for conditions that required *both* Holland to fill out the acknowledgement form and Bozzuto to then make a partial payment.  *See id.*  Accordingly, no fair reading of the subcontract supports construing the Payment Application as a separate contract requiring separate consideration.  *See Gerard*, 267 Md. at 706; *Hartford Accident*, 168 F. Supp. 3d at 835.  Thus, the release, which was part of the Payment Application and required under the subcontract, was "supported by the same consideration . . . support[ing] the contract itself."  *Id.*; *see also Gerard*, 267 Md. at 706 ("Consideration is found in the provisions of the contract itself.").

In the end, the Court must enforce the executed subcontract, "not the agreement that one or the other now wishes they had negotiated instead."  *Hartford Accident*, 168 F. Supp. 3d at 834 (quoting *Newell v. Johns Hopkins Univ.*, 215 Md. App. 217, 242 (2013)).  Had Holland wished to negotiate a narrower release, it should have done so.  *See Gerard*, 267 Md. at 706.  It did not.  Thus, the Court concludes, as it must, that Holland cannot now seek payment for claims that predate November 30, 2015, because it has already released entitlement to such claims per the Payment Application.  ECF Nos. 67-5, 67-9 & 67-10.  Partial summary judgment on these claims is granted in Bozzuto's favor.

### B.  Bozzuto's Summary Judgment Motion on Punch List Items

Bozzuto next seeks partial summary judgment related to its counterclaim.  ECF No. 67-1 at 24-26.  Bozzuto specifically argues that summary judgment should be granted on its breach of contract claim because Holland's abandonment of the job constitutes a material breach.  *Id.*  Because the contract terms made clear that Holland was bound to continue performance pending "final resolution of any claim," summary judgment must be granted for Bozzuto.

Article 5(a) of the subcontract makes clear that Bozzuto's contract with the owner is

wholly incorporated into the subcontract and that Holland is bound by the contractual terms:

> **[T]he Subcontractor shall be bound to the Contractor by the terms of this Agreement and the contract between the Owner and Contractor, and shall assume toward the Contractor all the obligations, risk, and responsibilities which the Contractor, by that contract, assumes toward the Owner**, provided that where any provision of those contract documents between the Owner and the Contractor is inconsistent with any provision of this Agreement, this Agreement shall govern.

ECF No. 67-2 at 4 (Art. 5(a)) (emphasis added). This provision obligates Holland to perform on the subcontract in a manner coexistent with Bozzuto's obligations under the primary contract. Thus, whatever obligations and responsibilities Bozzuto has to the owner, Holland has to Bozzuto. *See JJK Group, Inc. v. VW Intern, Inc.*, No. TDC–13–3933, 2015 WL 1459841, at *8 (D. Md. Mar. 27, 2015) (discussing *Seal & Co., Inc. v. A.S. McGaughan Co., Inc.*, 907 F.2d 450, 453 (4th Cir. 1990)); *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 980 (4th Cir. 1985) (also incorporating the general conditions of the main contract into the subcontract).

Article 4.3.4. of the "General Conditions of the Contract for Construction," a part of the primary contract, reads:

> **4.3.4. Continuing Contract Performance**. Pending final resolution of a Claim including arbitration, unless otherwise agreed in writing, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

ECF No. 67-4 at 46. The plain language of this provision, Bozzuto argues, means Holland had only "one option where it disputed work: complete all of its punch list work and separately pursue a claim for work it alleges is outside its scope." ECF No. 67-1 at 25.

Holland does not contest that it is bound by the above described provisions.[3] ECF No.

---

[3] The Court agrees the parties' dispute over the punch-list items qualifies as a "claim," defined as a "demand or assertion by one of the parties seeking . . . adjustment or interpretation of Contract terms, payment of money, . . . or other relief with respect to terms of the Contract. The term 'claim' also includes other disputes and

69-1 at 18.  Instead, and without legal support, Holland baldly argues this provision did not

require it to "continue work[ing] on disputed punch-list work" more than a year after it

represented to Bozzuto that its work was complete (presumably in reference to its November

2015 Payment Application).  *Id.*

The Court rejects Holland's contention.  The contract provisions, once again, are clear

and unambiguous.  *See Owens-Illinois*, 386 Md. at 496.  Holland was bound to fulfill the same

obligations to Bozzuto that Bozzuto had to the owner.  ECF No. 67-2 at 4 (Art. 5(a)).  This

included Holland continuing to perform the work diligently and pending final resolution of any

dispute with Bozzuto.  *Compare* ECF No. 67-4 at 46 ("Pending final resolution . . . shall proceed

diligently") *with JJK Group*, 2015 WL 1459841, at *5 ("shall proceed diligently with

performance of this contract, pending final resolution of any request for relief, claim, appeal, or

action arising under the contract.").  In this respect, Holland had two choices—either "perform

the ordered work, and then to seek an equitable adjustment later," or continue working until it

received a court order "excusing it from its performance obligations." *Id.* at *5, *8; *see also*

*Granite Comp. Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 550–51 (2d Cir. 1990)

(finding subcontractor's obligation to "proceed diligently" required it to "continue its

performance under the contract pending resolution of its claim.").  Holland did not pursue either

of these options.

Rather, Holland left the jobsite after deciding for itself that it had completed only the

punch-list items that it believed were its responsibility.  ECF No. 69-3 ¶¶ 3, 5; ECF No. 74 ¶¶ 7-

9.  Although the parties disagree as to the number of times Bozzuto urged Holland in 2017 to

complete the punch list or return to the worksite, this fact is not material to whether Holland left

_____

matters in question . . . arising out of or relating to the Contract."  ECF 67-4 at 46 (Article 4.3.1.).

the worksite in midst of its dispute with Bozzuto as to hundreds of outstanding punch-list items. ECF No. 67-3 ¶¶ 11-12; ECF No. 69-3 ¶¶ 3, 5; ECF No. 69-4.  When viewing the evidence most favorably to Holland, no reasonable trier of fact could conclude Holland did anything other than walk off the job when it was bound to stay and diligently complete the project or obtain court relief from the same.  ECF No. 69-4; ECF No. 69-5.  Holland's self-help solution was a material breach of its contractual duty to proceed diligently.  *See JJK Group,* 2015 WL 1459841, at *4, *6; *see also Alliant Techsystems Inc. v. United States*, 178 F.3d 1260, 1277 (Fed. Cir. 1999); *Granite Comp.*, 894 F.2d at 550–51.  Summary judgment, therefore, is granted in Bozzuto's favor on this liability theory.

Holland responds that many of the punch-list items fell outside its contractual obligations to Bozzuto or were not defectively performed in the first instance and so cannot constitute a material breach of the subcontract.  ECF No. 69-1 at 15-21; 69-5.  The record evidence makes clear that genuine disputes of fact exist as to whether all of the outstanding punch list items were Holland's responsibility or whether Holland completed certain items in a satisfactory manner.  However, under the above-described contractual terms, Holland was nonetheless obligated to complete the job and seek compensation thereafter as related to these very issues.  *See JJK Group,* 2015 WL 1459841, at *4, *6; *see also Alliant Techsystems*, 178 F.3d at 1277; *Granite Comp.*, 894 F.2d at 550–51.

In the end, Holland's leaving the project site constitutes a breach as a matter of law.  This breach allowed Bozzuto to terminate the subcontract and withhold final payment pending an accounting of costs and expenses to be deducted from the balance owed to Holland.  ECF No. 67-1 at 25-26 (citing ECF No. 67-2, Art. 3(h), 3(i), 13(a)); ECF No. 74 at 19.  As both parties readily acknowledge, trial will proceed as to damages.  The Court anticipates that facts related to

17

Holland's responsibility for performing contested punch list items, and whether they did so satisfactorily, are relevant to damages and will be litigated in that context.[4]  ECF No. 69-1 at 20-21; *Sky Angel U.S., LLC v. Discovery Comms., LLC,* 95 F. Supp. 3d 860, 869-870 (D. Md. 2015) (citing *Questar Builders, Inc. v. CB Flooring*, LLC, 410 Md. 241, 273, 281–83 (2009)); *see also First Nat. Realty Corp.*, 247 Md. 652, 655–62 (1967).  Consequently, the Court concludes that summary judgment is warranted on the question of Holland's breach arising from Holland's having left the worksite and reserves the factual disputes on the punch list items for trial as to damages.

### C.  The Brick Ties

Lastly, the parties cross-move for summary judgment as to Holland's alleged deficient installation of the brick ties.  ECF No. 67-1 at 26; ECF No. 69-1 at 21.  Holland's motion is dependent on its success regarding its requested exclusion of Bozzuto's expert opinion.  *Id.* at 21-24; ECF No. 68.  For the following reasons, the Court denies Holland's motion to exclude, and denies summary judgment as to both parties.

#### 1.  Kosteva Expert Opinion

Holland urges this Court to disregard Kosteva's opinion because it lacks sufficient

---

[4] Holland also asks this Court to refrain from awarding summary judgment for Bozzuto because a genuine dispute exists as to whether Bozutto's handling of the punch-list was consistent with its implied contractual duty of "good faith and fair dealing."  ECF No. 69-1 at 18.  Parties often assert the violation of this implied duty as an affirmative breach of contract claim, and not as a defense to a claim. The Court is unsure of what to make of Holland's argument.  *See Sky Angel*, 95 F. Supp. 3d at 869-870; *Questar Builders*, 410 Md. at 273 (citing 23 Willison, Contracts § 63:22 (4th ed. 2007)); *First Nat. Realty Corp.*, 247 Md. at 655–62.  Holland's mere invocation of this doctrine—in a single paragraph and without any application to the factual record—does not preclude this Court from awarding partial summary judgement in Bozzuto's favor for Holland's refusal to continue performance of its assigned work.  ECF No. 69-1 at 18; *see also Questar Builders*, 410 Md. at 281 n.25 (party asserting material breach for violation of the "duty of good faith and fair dealing" must make a "prima facie showing" that the other party exercised its discretion in "bad faith, i.e., the absence of  good faith").  However, to the extent Bozzuto argues at trial, as it apparently has here (ECF No. 67-1 at 25), that Holland is liable for any punch-list item simply because Holland did not perform the repairs, Holland may defend by introducing evidence that any given item was beyond the scope of work in the subcontract or by showing that it did perform the work in a satisfactory manner.

evidentiary foundation or sound methodology.  *Id.*  Rule 702 of the Federal Rules of Evidence

governs admissibility of expert opinions.  It permits admitting as substantive evidence any

opinion that will aid the trier of fact if the opinion is based on "sufficient facts or data," and is

the "product of reliable principles and methods" as reasonably applied to those facts.  Fed. R.

Evid. 702; *see also Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).  "A

reliable expert opinion must be based on scientific, technical or other specialized knowledge and

not on belief or speculation, and inferences must be derived using scientific or other valid

methods."  *Id.* (emphasis omitted).  In ruling on a motion to exclude an expert opinion, the Court

performs an important gatekeeping function to ensure that jurors only hear expert testimony that

is reliable, relevant, and helpful.  *See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993);

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2011).  The proponent of the expert

opinion bears the burden of meeting this standard by a preponderance of the evidence.  *See id.* at

199 (citing *Daubert*, 509 U.S. at 592 n.10).

   Holland maintains that Kosteva's opinion is unreliable because his data set is too

"limited."  ECF No. 69-1 at 23.  Holland persists that Kosteva's examination of 31 openings

amounts to surveying less than one percent of brick ties installed in the entire project.  ECF No.

68-1 at 4; ECF No. 69-1 at 22-23.  This, compared to the recommended guidance from the

American Society for Civil Engineers to sample "20% of the units in a small development"

distressed structures but only 10% in a large development," says Holland, renders Kosteva's

opinion unreliable.  ECF No. 68-5 at 2; ECF No. 68-1 at 4.  Holland also maintains that because

Kosteva did not sample the upper floors of the Rotunda's south elevation and, at the last minute,

limited the sample size to 31 openings when he had originally intended to sample 40 areas, his

methodology is unsound.  *Id.* at 5-8.

The Court concludes that these claims do not render Kosteva's opinion unreliable. Rather they are more properly raised before the jury to test the weight of Kosteva's opinion.  *In re Lipitor*, 892 F.3d 624, 631 (4th Cir. 2018).  Kosteva is a licensed engineer with a nationwide engineering consulting firm.  ECF Nos. 73-1 ¶ 1.  He has amassed seventeen years of post-graduate engineering experience and has worked extensively in investigating construction and masonry projects.  *Id.* ¶¶ 4-5, ECF No. 73-2 at 2.  More to the point, Kosteva testified at length about the methodology employed and his adherence to industry standards.  ECF No. 73-1 ¶ 15; ECF No. 73-4.  In particular, Kosteva explained that he "randomly selected . . . representative locations at the four primary wall types at the building," and "arbitrarily selected test locations at all elevations . . .  and at various floor levels."  ECF No 73-1 ¶ 14.  Kosteva further explained that this randomization—tailored to the Rotunda's specific design and construction and consistent with "prevailing industry practices"— allowed Kosteva to cover ten of the Rotunda's eleven floors, as well as the six facades of the building.  ECF No. 73-3 at 15-17; ECF No. 73-7 at 7.  The Court concludes that Kosteva's methodology has been clearly delineated and supports his conclusion that the "non-compliant ties are very likely located throughout the building facade," as well as his recommendation that supplemental anchors be installed throughout the project to cure Holland's deficient work.  ECF No. 67-26 at 6; ECF No. 73-1 ¶¶ 16-17.

Further, Bozzuto rightly notes that ASCE's recommended sample size of 10% is only a "guide and not an exhaustive list of sampling methods."  ECF No. 68-1 at 5.  Indeed, both Kosteva and Holland's own expert did not know of any "project similar in size and type . . . [that] has employed this methodology."  ECF No. 73-1 ¶ 19; ECF No. 73-5 at 7.  Accordingly, Bozzuto has established by a preponderance of the evidence that Kosteva's expert opinion is

based on sufficient data, uses a reliable methodology, and will assist the trier of fact in

determining the adequacy of Holland's brick-tie installation.  *See Daubert*, 509 U.S. at 589–93.

Holland's motion in limine is therefore denied.  ECF No. 68.

### 2.  The Parties' Cross-Motions

The parties' cross-motions focus on whether Holland's brick tie installation constitutes a

material breach of the subcontract.  ECF Nos. 67 & 69.  Because the evidence points in both

directions as to whether any such deficiencies constitute a *material* breach, both motions must be

denied.

The subcontract required Holland to follow the brick-tie manufacturer's installation

instructions and to embed brick ties at least two inches into the mortar of the outer wall.  ECF

No. 67-20 at 3; ECF No. 67-21 at 2; ECF No. 67-22 at 2.  Bozzuto argues that based on

Kosteva's opinion on the shoddy installation of the brick ties, no reasonable factfinder could

conclude that Holland's brick-tie work was anything but a material breach.  ECF No. 67-1 at 27.

To be sure, the undisputed factual record paints a troubling picture for Holland.   Of the

31 openings made at various locations throughout the Rotunda, Kosteva identified deficiencies in

28 of them.  ECF No. 67-26 at 7.  In 21 openings, Kosteva observed that over 75 percent of the

brick ties were improperly bent, pulled apart, or reconfigured so that a single leg of the brick tie

spanned the wall cavity—contrary to the manufacturer's installation instructions.  *Id.* at 4-5, 11;

ECF No. 67-23; ECF No. 67-25 at 6-9, 13-15.  In seven of the openings, Kosteva observed that

the brick ties were embedded not only less than the two inches required by the subcontract, but

less than the 1.5 inches required by building code.  ECF No. 67-26 at 4-5.   From the 31 openings

and 181 drill probes, Kosteva concluded that a "high probability" existed that "the observed

deficiencies are systemic throughout the building facades where brick masonry veneer is

installed." *Id.* at 7.

But Holland raises sufficient factual disputes that could permit a juror to conclude such breaches were not material ones.  ECF No. 69-1 at 21-23; *see also Barufaldi v. Ocean City, Chamber of Commerce, Inc*., 196 Md. App. 1, 23 (2010).  In a breach of contract action, not all failures to perform under the contract are actionable.  *See id.*  "A breach is material when it is such that further performance of the contract would be different in substance from that which was contracted for."  *Id.*  The materiality of the breach is, most often, a question of fact.  *See id.*

On this record viewed most favorably to Holland, a reasonable juror could conclude that many of the brick-tie deficiencies are not so substantial as to constitute material breaches.  For example, Kosteva marked several areas as "deficient" because they used "DW-10" brick ties, a type that the architect had not approved.  ECF No. 67-26 at 5.  But Kosteva admits they were nonetheless appropriate for use on this project.  ECF No. 69-8 at 2.  The parties' experts also disagree about whether the brick ties observed were "bent, twisted, or otherwise modified" to a degree that would materially impact the performance of the tie.  ECF No. 69-9 at 5.  Holland also rightly argues that a fact finder may not be persuaded that Kosteva's assessment based on only 31 openings is sufficient.  *Id.*  The evidence thus precludes finding that any such defects in the installation of brick ties constitute, as a matter of law, a material breach.  *See Barufaldi*, 196 Md. at 23.  The cross-motions for summary judgment are thus denied.

## IV.    Conclusion

For the foregoing reasons, the Court grants in part and denies in part Bozzuto's motion for partial summary judgment (ECF No. 67); denies Holland's cross-motion for partial summary judgment (ECF No. 69); denies Holland's motion in limine to exclude expert testimony (ECF

No. 68); and denies Holland's motion for certification of question to the Maryland Court of

Appeals (ECF No. 70).  A separate Order follows.


July 28, 2020                                               ____/S/_____
Date                                                       Paula Xinis
                                                           United States District Judge